*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | |
|---|---|
| LISA M. FARRIN,                )                   | |
|                                )                   | |
|         *Plaintiff*            )                   | |
|                                )                   | |
| v.                             )                   | *Docket No. 05-144-P-H* |
|                                )                   | |
| JO ANNE B. BARNHART,           )                   | |
| **Commissioner of Social Security,**  )            | |
|                                )                   | |
|         *Defendant*            )                   | |

*REPORT AND RECOMMENDED DECISION*[1]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the questions whether there was sufficient testimony from the vocational expert to support the administrative law judge's conclusion and whether the hypothetical question posed to the vocational expert by the administrative law judge was fatally deficient. I recommend that the decision of the commissioner be vacated.

In accordance with the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Secretary of Health & Human Servs*., 690 F.2d 5, 6 (1st Cir. 1982), the administrative law judge found, in relevant part, that the plaintiff suffered from degenerative disc disease of the lumbar spine and residuals of bilateral carpal tunnel release surgery, impairments that were severe but did not meet or equal the criteria of any impairments listed in Appendix 1 to Subpart

---

[1] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2)(A), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office. Oral argument was held before me on
(*continued on next page*)

1

P, 20 C.F.R. Part 404 (the "Listings"), Findings 3-4, Record at 27; that the plaintiff's allegations regarding her limitations were not totally credible, Finding 5, *id.*; that the plaintiff had the residual functional capacity prior to June 1, 2002 for light work with minimal use of the hands for tasks involving repetitive motion or fine manual dexterity, and after June 1, 2002 for a profoundly constrained range of sedentary work, Finding 6, *id.*; that the plaintiff at all times was unable to perform any of her past relevant work, Finding 7, *id.*; that, given her age ( a "younger individual"), education (high school or equivalent), lack of transferable skills and exertional limitations prior to June 1, 2002, use of Rule 202.21 from Appendix 2 to Subpart P, 20 C.F.R. Part 404 (the "Grid") as a framework for decision-making resulted in the conclusion that there was a significant number of jobs in the national economy that she could have performed, including work as a security guard, Findings 8-10, *id.*; that after June 1, 2002 the plaintiff's additional limitations meant that she could not make an adjustment to work that existed in significant numbers in the national economy, Finding 11, *id.*; and that the plaintiff had been under a disability, as that term is defined in the Social Security Act, since June 1, 2002, Finding 12, *id*. This appeal addresses only the period between October 30, 2000, the alleged date of onset, *id*. at 21, and June 1, 2002. The Appeals Council declined to review the decision, *id*. at 7-9, making it the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Secretary of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Secretary of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the

---

March 2, 2006, pursuant to Local Rule 16.3(a)(2)(C) requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority and page references to the administrative record.

conclusion drawn.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Rodriguez v. Secretary of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The administrative law judge reached Step 5 of the sequential process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 647 F.2d at 7.  The record must contain positive evidence in support of the commissioner's findings regarding the plaintiff's residual work capacity to perform such other work.  *Rosado v. Secretary of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

### Discussion

The plaintiff first contends that the vocational expert's testimony does not provide substantial support for the administrative law judge's conclusion that there was a significant number of jobs in the national economy that she could perform in the relevant period.  Plaintiff's Itemized Statement of Errors ("Itemized Statement") (Docket No. 8) at 2.  This is so, she asserts, because the vocational expert only "estimated" that a third of all security guard jobs might be gate guards, a job which the plaintiff could perform.  *Id*. at 3.  This testimony, she claims, is not reliable because "the VE readily admits that statistics are not kept in a way that allow[s] her to give a precise number of jobs for the claimant," she testified that she knew of no surveillance system monitor jobs in Maine that matched the Dictionary of Occupational Titles' description of that job, and the administrative law judge "acknowledge[d]" that the testimony does not support his decision.  *Id*. at 2-4.

The administrative law judge did not rely on the availability of jobs as a surveillance system monitor, Record at 25, so I will not consider that aspect of the plaintiff's appeal further.  The alleged "acknowledgment" by the administrative law judge, Itemized Statement at 2; Record at 25, refers only to the evidence about the surveillance system monitor position, so again, that asserted ground for

3

remand need not be considered. The administrative law judge did rely on the security guard position, stating that there were 1,000,000 such jobs nationally, 2,600 regionally and 800 locally, without discussing any qualifications in the vocational expert's testimony to this effect. *Id*.

The vocational expert's testimony about the gate guard was that "[t]here are 2,600 security guards altogether, and I'm estimating that a third of those might be a total of the gate guards and the Sam's Club, Costco — other security in buildings and such, so that would be . . . maybe 800. In the United States, there's over a million; so we're looking at probably a third of a million." *Id*. at 681. The remark about the way statistics are kept appears later in the transcript.

> Q: And you opined that there are 90 of those [surveillance system monitor] jobs in Maine. The difficulty in trying to understand in the DOT frame of reference is that there aren't 90 public transportation system terminal survey [sic] system monitor jobs in Maine, correct?
>
> A: There aren't any that I know of.
>
> Q: Okay. And what you're actually telling us is that there may be some jobs that the DOT would lump into a different security guard code that might fall into the same kind of activity that's described in surveillance system monitor jobs in the DOT?
>
> A: I am.
>
> Q: Okay. The difficulty of course is that no one keeps these statistics that way, correct?
>
> A: We can't count any jobs that don't exist, obviously, so there's no jobs that fall under the —
>
> Q: The DOT [INAUDIBLE} —
>
> A: — 379 code.
>
> Q: Right. In the —
>
> A: When you read the security guard code which is the gate guard included in, it could be included in that —
>
> Q: Right.

4

>A: — because it talks about museum —
>
>Q: Right.
>
>A: — racetracks and that sort of thing, but the description isn't as good.
>
>Q: Right.
>
>A: It isn't as close to the survey [sic] system monitor.
>
>Q: And the reason though that outside the public transportation terminal arena, these jobs are lumped into the security guard is that generally if you look across the board, these jobs tend to be part of a larger security job, rather than a free-standing job, correct?
>
>A: Yes.
>
>Q: And there are no separately kept statistics that would show us how many are limited to an SVP sedentary kind of level?
>
>A: Correct
>
>Q: And without any job market survey or something similar to that, the best we can do is an estimate?
>
>A: Well, yes. However, we know that there are 15 jails and we know that there are six of those positions in each jail, so we know that there are that many.
>
>Q: Right, but we also know that in the jail context, people have to be available to do other activities beyond just watching the monitor?
>
>A: That wasn't my understanding.

*Id*. at 683-85. When read in context, the "no statistics" exchange appears to be about the job of surveillance system monitor rather than about the gate guard position which is the only one on which the administrative law judge relies. Further evidence that this exchange is not relevant to the administrative law judge's decision is counsel's question limiting the jobs to "an SVP sedentary kind

5

of level." The administrative law judge found that the plaintiff had a residual functional capacity for work at the light exertional level during the relevant period. *Id.* at 27.

The fact that a very limited number of a given job might be available locally is not determinative of the question whether there is a significant number of such jobs in the national economy, which is the test at Step 5 of the sequential review process. The regulations support the position that it is only the number of jobs available in the national economy that is to be considered with respect to the "significant number" requirement. 20 C.F.R. §§ 404.1566(a), 416.966(a). This court has already held that the existence of more than 150,000 jobs nationally is sufficient to meet the "significant number" requirement. *Brun v. Barnhart*, 2004 WL 413305 (D. Me. Mar. 3, 2004), at *5 - *6. The only remaining question, therefore, is whether the vocational expert's estimate — that one-third of these are suitable for the plaintiff — can serve as reliable evidence. The plaintiff characterizes the estimate as "unreliable" and then cites case law supporting the unremarkable proposition that "[u]nreliable expert opinion cannot be 'substantial' evidence supporting the commissioner's step five conclusion." Itemized Statement at 4. Clearly, that assertion begs the question. Counsel for the plaintiff was unable at oral argument to cite case law on the specific issue raised here.[2]

The vocational expert's testimony about the "estimate" was as follows, when asked whether there were any jobs available in the national economy for a person who had "had an ongoing problem for years with carpal tunnel that was fixed at one time in both hands and has started to recur to some degree in the right-dominant hand again so that she . . . cannot do constant, repetitive work:"

> The first one that I would consider because of her background in corrections and with the boy's [sic] home would be as a security guard but

---

[2] Counsel for the plaintiff asserted at oral argument that the case of *McKinnie v. Barnhart*, 368 F.3d 907 (7th Cir. 2003), cited in the plaintiff's statement of errors, supports the proposition that testimony by a vocational expert in the form of an estimate is inherently unreliable. The *McKinnie* opinion cannot reasonably be read to support that proposition. 368 F.3d at 910-11.

> only the gate guard that checks IDs because obviously with this kind of hand problem, she couldn't be an armed guard nor could she do any capture, but to check IDs at a gate or something like that, I think that's perfectly possible. That's light. It's occasional reaching, handling, supposedly no fingering but I know for a fact that you write things down but I guess it isn't often enough that they consider it over 33 percent. And it includes ID checkers in stores. There are 2,600 security guards altogether, and I'm estimating that a third of those might be a total of the gate guards and the Sam's Club, Costco — other security in buildings and such, so that would be . . . maybe 800. In the United States, there's over a million; so we're looking at probably a third of a million.

Record at 679-81. The plaintiff complains that "[t]he VE has no statistical basis to make this estimate nor did she give even an estimate of regional or national numbers or of distribution into 'several' regions nationally." Itemized Statement at 3. As I have already noted, there is no requirement that a vocational expert's testimony about the number of jobs available be broken down into regional or local numbers. It is incorrect to state that the vocational expert did not give an estimate of the national number of such jobs. Further, as counsel for the plaintiff established at the hearing, "without any job market survey or something similar to that, the best we can do is an estimate." Record at 684. Counsel for the plaintiff, who also represented her at the hearing, *id*. at 657, was free to cross-examine the vocational expert about the basis for her estimate, but did not do so. *See Ragsdale v. Shalala*, 53 F.3d 816, 819 (7th Cir. 1995) (setting out what claimant can do to "bring out the vocational expert's thought process;" his failure to do so cannot constitute grounds for remand).

    A vocational expert's testimony must be based on estimates by its very nature. The social security scheme does not contemplate that vocational experts will have the benefit of actual market surveys for each case in which they may testify. It is a common practice in reported cases for the administrative law judge to pose a hypothetical question to a vocational expert which generates a response involving a given number of jobs being available and to follow that question with another asking the expert how many of those jobs would still be available given an additional factor or factors.

The result is almost always an estimate, on which administrative law judges and courts often rely. *See, e.g., Donatelli v. Barnhart*, 127 Fed.Appx. 626, 631 (3d Cir. 2005) ( vocational expert estimated there are approximately 3 million jobs within categories at issue; ALJ relied on this testimony; court finds it to be substantial evidence); *Higgins v. Barnhart*, 42 Fed.Appx. 846, 851 (7th Cir. 2002) (ALJ directed vocational expert to limit estimate of number of jobs available to claimant to those that did not involve math; court affirms decision);  *Bryant v. Massanari*, 17 Fed.Appx. 622, 623 (9th Cir. 2001) (vocational expert estimated number of jobs in county and state; claimant casts doubt on county estimate by citing a quarterly employment journal but not on statewide estimate; decision affirmed); *Alfrey v. Secretary of Health & Human Servs.*, 960 F.2d 149 (table), 1992 WL 74372 (6th Cir. 1992) at \*\*4 (ALJ properly relied on vocational expert's estimate of number of jobs available).

The plaintiff is not entitled to remand on this basis.

The plaintiff's second written argument merits only a brief mention.  She contends that remand is required because the hypothetical question posed to the vocational expert "did not mention the claimant's exertional level classification."  Itemized Statement at 5.  While it is technically correct that the question does not refer to the residual functional capacity for light work adopted by the administrative law judge for the relevant period, Record at 27, the response of the vocational expert upon which the administrative law judge relied is that the job of gate guard is "light," *id*. at 680, which can only be a reference to the exertional level at which that job is classified.  Accordingly, the plaintiff cannot have been harmed by the omission of the light exertional level from the hypothetical question.

At oral argument, counsel for the plaintiff contended that remand was also required because the gate guard position on which the administrative law judge relied carries a specific vocational preparation level ("SVP") of 3 in the *Dictionary of Occupational Titles*, making it semi-skilled and

8

thus unavailable for a claimant found to have no transferable skills (Finding 9, Record at 27). In response to a contention by counsel for the commissioner that this issue was not raised in the plaintiff's statement of errors, counsel for the plaintiff responded that the issue is fairly raised on page 5 of that document. I disagree. That page of the statement of errors, Itemized Statement at 5, discusses only the alleged inadequacies of the administrative law judge's hypothetical question to the vocational expert. Raising an issue for the first time at oral argument violates Local Rule 16.3(a). I do not read *Sims v. Apfel*, 530 U.S. 103, 105 (2000), to hold that a court must consider claims asserted for the first time in Social Security cases after the procedural deadline for raising such claims imposed by a court's own rules has passed. *See generally Wimberly v. Barnhart*, 128 Fed.App'x 861, 864 (3d Cir. 2005). Because this court has not had the occasion to make its position on this issue clear before this case, however, I will consider the tardily raised issue on its merits in this case only. Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court.[3]

On its merits, this plaintiff's new argument is correct. The gate guard position specified by the vocational expert, Record at 681, does carry an SVP of 3, *Dictionary of Occupational Titles* (U.S. Dep't of Labor, 4th ed. rev. 1991), § 372.667-030. An SVP of 3 corresponds to semi-skilled work. Social Security Ruling 00-4p, reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2004), at 245. An individual is able to perform semi-skilled work only if she has transferable skills. 20 C.F.R. §§ 404.1568(d)(1), 416.968(d)(1). Here, the administrative law judge

---

[3] It is essential that social security plaintiffs specify in their statements of errors all claimed errors and include citations to the record and to caselaw supporting their positions in order to insure that the court and the commissioner's counsel may properly prepare for meaningful oral argument. In this case, the commissioner's counsel, when queried about the plaintiff's belatedly raised SVP issue, addressed the issue on the merits without any suggestion that he was hindered in his ability to do so by the plaintiff's first mention of it at oral argument.

found that the plaintiff has no transferable skills. Finding 9, Record at 27. In the absence of the gate guard position, the record lacks substantial evidence in support of the commissioner's decision. Accordingly, remand is required. *See Carle v. Barnhart*, 2005 WL 3263938 (D. Me. Nov. 30, 2005), at *3.

### Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case remanded for further proceedings consistent with this opinion.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within ten (10) days after being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 6th day of March, 2006.

/s/ David M. Cohen
David M. Cohen
United States Magistrate Judge